UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDREW LUCAS, | Civil Action No. 18-17240 (FLW) |
| Petitioner, | |
| v. | OPINION |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

This matter has been opened to the Court by Petitioner Andrew Lucas ("Lucas" or "Petitioner") filing of a motion to vacate, correct, or set aside sentence pursuant to 28 U.S.C. § 2255 ("Motion"). For the reasons explained in this Opinion, the Court denies the Motion and also denies a certificate of appealability.

## I.   FACTUAL BACKGROUND[1] & PROCEDURAL HISTORY

A panel of the Third Circuit briefly summarized the trial evidence and procedural history with respect to Lucas' crimes as follows:

> Lucas was a financial advisor doing business as Lucas Capital Advisors ("LCA"). In 2009, Lucas became interested in acquiring a piece of New Jersey farmland called Burke Farm.
>
> On December 15, 2009, Lucas submitted an application to Central Jersey Bank, N.A. ("Central Jersey Bank") to assume responsibility for the property's mortgage. Lucas made in the application several misrepresentations relating to his personal finances and business income. He also submitted false tax and other documents for himself and his father, whom Lucas listed as a co-purchaser of the Farm and guarantor of the loan.
>
> On February 15, 2010, Lucas solicited a $250,000 loan from an LCA client, Robert Janowski, who suffered from mental illness. Lucas told Janowski that the money would be invested in a company named VLM Investments, LLC ("VLM"), would accrue

---

[1] The factual background is taken from the record in this matter and the record on appeal.

> 6% annual interest, and would be secured by various VLM assets. The promissory note for the loan bore the forged signature of Thomas Littlefield, Lucas's cousin, who was unaware that Lucas had used it.
>
> Lucas did not create VLM until February 18, 2010. Along with the company, Lucas set up various associated bank accounts and procured an employer identification number from the IRS. Unbeknownst to Littlefield, Lucas identified him in several documents as VLM's sole member and manager, and used his signature and social security number on various tax- and business-related forms.
>
> On February 22, 2010, Janowski wired $250,000 to a bank account Lucas had established for VLM. Lucas withdrew the money from the VLM account and used it toward the Burke Farm acquisition.
>
> The Government opened an investigation into Lucas's dealings. On February 6, 2014, a grand jury returned an eleven-count indictment charging Lucas with various crimes related to the purchase of Burke Farm. Trial commenced on September 3, 2014. On September 18, 2014, the jury found Lucas guilty on all counts. He was convicted of wire fraud, 18 U.S.C. § 1343; illegal monetary transaction, 18 U.S.C. § 1957; loan application fraud, 18 U.S.C. § 1014; making false statements to the IRS, 18 U.S.C. § 1001; aggravated identity theft, 18 U.S.C. § 1028A(a)(1); obstruction of a grand jury investigation, 18 U.S.C. § 1503; and falsification of records in a federal investigation, 18 U.S.C. § 1519. The District Court denied Lucas's subsequent motion for judgment of acquittal as to Counts One and Two (wire fraud and illegal monetary transaction). The Court sentenced Lucas to sixty months of imprisonment and three years of supervised release, and ordered Lucas to forfeit his interest in Burke Farm.

*United States v. Lucas*, 709 F. App'x. 119, 121-22 (3d Cir. 2017).

On appeal, Lucas challenged the District Court's decision to exclude certain evidence and argued that his conviction must be reversed because of erroneous jury instructions, insufficiency of the evidence, prosecutorial misconduct, and an impermissible variance between the indictment and evidence presented at trial. *See id.* at 122. The Third Circuit rejected these claims and affirmed the judgment of this Court. *Id.* at 125.

On December 14, 2018, Lucas filed his first motion for relief under 28 U.S.C. § 2255. On

March 15, 2019, he filed an Amended § 2255 Motion ("Amended Motion"), presenting three

claims for relief:

> **Ground One:** Brady violations based on the Government's alleged failure
> to disclose: (a) "material executed agreements between Robert Janowski
> and Lucas Capital Advisors, LLC and other related loan documents" and
> (b) "material information as to the historical incompetency of Robert
> Janowski";
>
> **Ground Two:** Ineffective assistance of trial counsel for alleged "fail[ure]
> to investigate the release signed by all customers of [Lucas] including
> Robert Janowski";
>
> **Ground Three:** Ineffective assistance of trial counsel for allegedly failing
> to "oppose [the] government's motion in limine which allowed the
> testimony of Wendy Janowski to be admitted at trial" which testimony
> "exceeded the scope of government's motion and was prejudicial."

*See* Amended Motion at 5-8.

The government filed its Answer on July 10, 2019.  ECF No. 11.  Petitioner filed his

Reply Brief on September 3, 2019.  ECF No. 14.  The matter is fully briefed and ready for

disposition.

## II.     STANDARD OF REVIEW

Title 28, United States Code, Section 2255 permits a court to vacate, correct, or set aside

a sentence

> upon the ground that the sentence was imposed in violation of the
> Constitution or laws of the United States, or that the court was
> without jurisdiction to impose such a sentence, or that the sentence
> was in excess of the maximum authorized by law, or is otherwise
> subject to collateral attack. . . .

28 U.S.C. § 2255.

A criminal defendant bears the burden of establishing his entitlement to § 2255 relief.

*See United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005).  Moreover, as a § 2255 motion to

vacate is a collateral attack on a sentence, a criminal defendant "must clear a significantly higher

hurdle than would exist on direct appeal." *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir.

2014) (citing *United States v. Frady*, 456 U.S. 152, 166 (1982)).  In considering a motion to

vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations

unless they are clearly frivolous on the basis of the existing record." *United States v. Booth*, 432

F.3d 542, 545 (3d Cir. 2005) (internal quotation marks and citation omitted). "It is the policy of

the courts to give a liberal construction to *pro se* habeas petitions." *Rainey v. Varner*, 603 F.3d

189, 198 (3d Cir. 2010).

    The Court may dismiss the motion without holding an evidentiary hearing where the

motion and the files and records of the case conclusively show that the prisoner is entitled to no

relief.  *See* 28 U.S.C. § 2255(b); *Liu v. United States*, No. 11–4646, 2013 WL 4538293, at *9

(D.N.J. Aug. 26, 2013) (citing *Booth*, 432 F.3d at 545–46).  Moreover, the Third Circuit has

"repeatedly emphasized that 'bald assertions and conclusory allegations do not afford a sufficient

ground for an evidentiary hearing' on a habeas petition." *Palmer v. Hendricks*, 592 F.3d 386,

395 (3d Cir. 2010) (citations omitted).

**III.    ANALYSIS**

**a.  *Brady* Claims (Ground One)**

    In his first claim for relief, Lucas claims that the Government violated its disclosure

obligation under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny.  A violation of *Brady*

occurs when the government fails to disclose evidence materially favorable to the accused,

including both impeachment evidence and exculpatory evidence. *United States v. Bagley*, 473

U.S. 667, 676 (1985).  There are three components of a *Brady* violation: (1) the evidence at issue

was favorable to the accused, either because it was exculpatory or it had impeachment value: (2)

the prosecution suppressed the evidence, either willfully or inadvertently; and (3) the evidence

was material. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999); *see also United States v. Pelullo*, 399 F.3d 197, 209 (3d Cir. 2005).

The standard for materiality is the same as that iterated in *Strickland v. Washington*, 466 U.S. 668, 694 (1984). *See Marshall v. Hendricks*, 307 F.3d 36, 53 (3d Cir. 2002). As the United States Supreme Court summarized:

> [The] touchstone of materiality is a "reasonable probability" of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial."

*Kyles v. Whitley*, 514 U.S. 419, 433, 434 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)). Thus, evidence is material if there is a "reasonable probability" that, had the evidence been disclosed to the defense, the result of the underlying proceeding would have been different. *Strickler*, 527 U.S. at 280 (citing *Bagley*, 473 U.S. at 682).

Lucas contends that the government failed to disclose two general categories of *Brady* material: (a) "material executed agreements between Robert Janowski and Lucas Capital Advisors, LLC and other related loan documents"; and (b) "material information as to the historical incompetency of Robert Janowski." Amended Motion at 5. As argued by the government, Lucas procedurally defaulted both *Brady* claims because he did not raise these issues on direct appeal. *See* Amended Motion at 5, Ground One (b).

Claims not raised at trial or on direct appeal are "procedurally defaulted" and so "may not be raised on collateral review." *Massaro v. United States*, 538 U.S. 500, 504 (2003). To preserve a claim for collateral review, a prisoner must timely raise the issue at trial and on direct appeal. *See, e.g., Wainwright v. Sykes*, 433 U.S. 72, 85–86 (1977) (claim defaulted when no

contemporaneous objection was lodged at trial); *Murray v. Carrier*, 477 U.S. 478, 490–92 (1986) (claim not raised on direct appeal is procedurally defaulted).

Lucas' procedural default prevents this Court's consideration of the claim on § 2255 review absent a showing of "cause and prejudice."  *Pelullo*, 399 F.3d at 220–21; *see also Bousley v. United States*, 523 U.S. 614, 621–22 (1998); *United States v. Frady*, 456 U.S. 152, 168 (1982).

The government also argues that Lucas has not attempted to show cause or actual prejudice resulting from the alleged *Brady* violations, and given the strength of trial evidence of guilt, he could not do so.  Accordingly, his claim must fail.  Lucas asserts in his reply brief that he has established cause because his attorney—who represented him at trial and on direct appeal—told Lucas he could not raise the *Brady* claim(s) on direct appeal.

Nevertheless, even if Petitioner can establish cause for his procedural default of the claim, he must still show actual prejudice.  *Carrier*, 477 U.S. at 489; *Frady*, 456 U.S. at 170 (error must have "worked to [defendant's] actual and substantial disadvantage") (emphasis omitted).  Such prejudice exists only when there is a "reasonable probability" that, absent the error, the result of the trial or appeal would have been different. *Strickler,* 527 U.S. at 296; *see also Cone v. Bell*, 556 U.S. 449, 469–70 (2009).  In this regard, the cause and prejudice inquiry parallels the merits of the alleged *Brady* violation itself.  *See, e.g.*, *Strickler*, 527 U.S. at 282; *Slutzker v. Johnson*, 393 F.3d 373,385–86 (3d Cir.2004).

If the *Brady* claims lack merit, then Petitioner cannot establish prejudice. *Strickler*, 527 U.S. at 282; *Albrecht v. Horn*, 485 F.3d 103, 132 (3d Cir. 2007); *Slutzker*, 393 F.3d at 385 (noting that the determination of whether the prejudice prong has been satisfied for the

procedural default of a *Brady* claim "is identical to the analysis of materiality under *Brady* itself.").

Here, Petitioner does not provide to the Court the specific documents and/or information he claims the government withheld.  As noted by the government, *Brady* violations usually involve "the discovery, after trial of information which had been known to the prosecution but unknown to the defense" *See United States v. Agurs*, 427 U.S. 97, 103 (1976); *see also United States v. King*, 628 F.3d 693, 702-703(4th Cir. 2011) (noting "atypical" cases where a defendant need not make a particularized showing of the exact information sought and how it is material and favorable).  In *Dennis v. Secretary, Pennsylvania Department of Corrections*, 834 F.3d 263, 275 (3d Cir. 2016), for example, Dennis relied on three specific pieces of exculpatory and impeachment evidence: (1) a receipt revealing the time that a witness had picked up her welfare benefits, several hours before the time she had testified to at trial, thus corroborating Dennis's alibi (the "Cason receipt"); (2) a police activity sheet memorializing that another witness had given a previous statement inconsistent with her testimony at trial, which provided both invaluable material to discredit the Commonwealth's key eyewitness and evidence that someone else committed the murder (the "Howard police activity sheet"); and (3) documents regarding a tip from an inmate detailing his conversation with a man other than Dennis who identified himself as the victim's killer (the "Frazier documents").  In *Bracey v. Superintendent Rockview SCI*, 986 F.3d 274, 279 (3d Cir. 2021), Bracey discovered posttrial that the Commonwealth had disclosed only some of the criminal cases that were pending against two cooperators who testified against him.

In contrast, Lucas has not provided the specific executed agreements between Robert Janowski and Lucas Capital Advisors, LLC and other related loan documents or the specific

information regarding the historical incompetency of Robert Janowski he claims the government withheld; nor has he shown how these documents and information were material to his defense. Instead, he merely alleges in a conclusory fashion that the government withheld these documents and/or information, and these documents and/or information were material to his defense.

Having failed to provide sufficient facts to suggest that the government withheld any specific documents or information that would have aided his defense and having failed to provide the documents and information allegedly withheld, Petitioner may not use this proceeding as a fishing expedition in the hopes of finding such documents or information. The right to discovery in a § 2255 case depends on whether the defendant can provide "reason to believe that [he] may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997) (quotation marks, alteration omitted); *see also Deputy v. Taylor*, 19 F.3d 1485, 1493 (3d Cir. 1994) (citing *Munoz v. Keane*, 777 F. Supp. 282, 287 (S.D.N.Y.1991) ("[P]etitioners are not entitled to go on a fishing expedition through the government's files in hopes of finding some damaging evidence."), aff'd, 964 F.2d 1295 (2d Cir.)); *Borden v. Allen*, 646 F.3d 785, 810 n. 31 (11th Cir. 2011) ("Inherent in the fact pleading requirement of the federal habeas rules is the notion that a habeas case is not a vehicle for a so-called fishing expedition via discovery, an effort to find evidence to support a claim.").

Lucas' arguments that he is unable to provide specific documents or information due to the alleged suppression by the government is unconvincing, particularly with respect to the executed agreements between Robert Janowski and Lucas Capital Advisors, LLC. *See U.S. v. Pelullo*, 399 F.3d 197, 216 (3d Cir. 2005) (finding no *Brady* violation where the supposedly undisclosed documents were defendant's own business records that the government made available to him after seizing them). And Lucas offers no compelling reasons or facts to support

his belief that the government suppressed material information about the "historical incompetency" of Robert Janowski.

Finally, Petitioner has not made any showing of prejudice. Specifically, he has not shown that there is a reasonable probability that the result of the trial would have been different if a) "executed agreements between Robert Janowski and Lucas Capital Advisors, LLC and other related loan documents" and/or (b) "information as to the historical incompetency of Robert Janowski" had been disclosed to the defense. Because Petitioner *Brady* claims fail on the prejudice prong, his procedural default is not excused under the cause and prejudice exception. The Court denies relief on his *Brady* claims as asserted in Ground One of his Amended Motion.

### b. Ineffective Assistance of Counsel (Grounds Two and Three)

Lucas' remaining grounds for relief allege that his counsel provided ineffective assistance of counsel. To obtain succeed on a Sixth Amendment ineffective assistance of counsel claim, a prisoner must establish: 1) his "counsel's representation fell below an objective standard of reasonableness," and 2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Holland v. Horn*, 519 F.3d 107, 120 (3d Cir. 2008). If the movant fails to satisfy either prong of the *Strickland* standard, his claim will fail. *Strickland*, 466 U.S. at 697.

In Ground Two of his § 2255 Motion, Lucas alleges that trial counsel "failed to investigate the release signed by all customers of [Lucas] including Robert Janowski." Amended Motion at 6. Lucas suggests that the supposed release was somehow related to "the essential element of mens rea regarding Counts 1 and 2." *Id.* Lucas does not attach a copy of any of the alleged "releases," describe what they say, or sufficiently explain how any such release would

have advanced the defense.  Nor does Lucas allege or provide an affidavit stating that he told his

counsel about the alleged release(s) and asked him to present the releases as part of his defense.

Lucas' vague and unsupported contention that "throughout pre-trial preparation and

during trial, counsel's performance fell below any meaningful standard," Amended Motion at 6,

(Ground Two) also does not merit further review. "[V]ague and conclusory allegations contained

in a § 2255 petition may be disposed of without further investigation by the District Court.

*United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000) (citing *United States v. Dawson*, 857

F.2d 923, 928 (3d Cir. 1988)).

Moreover, to satisfy the prejudice prong, Lucas must show "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient

to undermine confidence in the outcome." *Id.*  "[A] court need not determine whether counsel's

performance was deficient before examining the prejudice suffered by the defendant as a result

of the alleged deficiencies." *Id.* at 697.  "An error by counsel, even if professionally

unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error

had no effect on the judgment." *United States v. Gray*, 878 F.2d 702, 710 (3d Cir. 1989).

Like the deficient performance prong, Lucas bears the burden on this prong.  *Strickland*, 466

U.S. at 692; *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  As Lucas does not even address the

prejudice prong in the Amended Motion, he cannot carry his burden under *Strickland*.  Relief on

Ground Two is thus denied.

In Ground Three, Lucas contends that trial counsel "did not oppose [the] government's

motion *in limine*, which allowed the testimony of Wendy Janowski to be admitted at trial," and

that Wendy's testimony "exceeded the scope of [the] Government's motion." Amended Motion
at 8.

Prior to trial, the Government moved under Fed. R. Evid. 404(b) to admit Wendy's
testimony regarding her meeting with Lucas in which he asked her to sign documents that would
have acknowledged that Lucas was not Robert Janowski's financial advisor.  ECF 30, page 3.
The Court admitted that testimony at trial without objection. *See* Trial Tr. Dated Sept. 9, 2014,
161:2-16.  Petitioner provides no arguments as to why his counsel should have objected to the
admission of this testimony or why those objections would have been successful.  As such, he
fails to show that his counsel was deficient or that he suffered prejudice with respect to his
counsel's failure to oppose the government's motion *in limine*.

Wendy's other testimony, including her testimony about Robert Janowski's cognitive
limitations about which Lucas presumably complains, was not subject to the motion *in limine*
because it did not involve evidence of Lucas' "crime, wrong, or other acts," Fed. R. Evid.
404(b)(1),  or address Lucas' criminal propensity.  For instance, Wendy testified that Robert
Janowski was her brother-in-law who she met when they were in high school together and had
known for approximately 34 years.  *See* Tr. at 165.  When Wendy and Robert were in high
school together, Robert was "normal," had his own lawn care business, helped tend his parents'
bar, and liked to spend time with his friends.  *Id.* at 165-67.  Wendy did not see Robert for
several years while she was away at college, and when she returned, Robert had changed. *Id.* at
167.  He became progressively worse and talked about "chemicals in the air," and thought
"people were living under his basement." *Id.* at 168.  He stopped bathing and his hygiene
deteriorated, and he stopped visiting Edward and Wendy's house for family gatherings. *Id.* at
169-170.  In the summer of 2013, Robert was committed to a psychiatric hospital just before

Labor Day.  *Id.* at 179-180 . When Wendy went to Robert's house after that commitment, it was in total disarray. *Id.* at 180-183.

To the extent Lucas is complaining about Wendy Janowski's testimony about Robert Janowski's mental limitations, there is no basis for finding trial counsel ineffective for failing to object.  "Evidence of [a victim's] mental ability" is admissible to show "the context of [defendant's] relationship with the victim." *United States v. Johnson*, 54 F. App'x 453, 454 (8th Cir. 2002) (not published) (citing *United States v. Butler*, 56 F.3d 941, 945 (8th Cir. 1995)).  This is particularly so when, as here, Lucas' defense was that Robert Janowski freely consented to and was sufficiently informed about the purposes to which Lucas put Janowski's money.  *See* Trial Tr. Dated Sept. 17, 2014, at 143-148 (defense summation).  As counsel cannot be ineffective for failing to make a meritless objection, *see Parks v. Sheahan*, 104 F. Supp. 3d 271, 285 (E.D.N.Y. 2015), Lucas' claim fails.  Because Petitioner can establish neither deficient performance nor prejudice with respect to his counsel's failure to oppose the government's motion in limine with respect to Wendy Janowski's testimony or counsel's failure to object to the scope of the testimony at trial, the Court denies relief on Ground Three.

## IV.    CONCLUSION

For the reasons explained in this Opinion, the Court denies the Motion without an evidentiary hearing.  Moreover, the Court denies a certificate of appealability as reasonable jurists would not find the Court's assessment debatable.  *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability is appropriate only if the petitioner "has made a substantial showing of the denial of a constitutional right.");  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  An appropriate Order follows.

s/Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge

DATED: May 12, 2022